IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

CHARLES HUBERT ANTHONY, and
DONNA KAYE MARLOWE ANTHONY,

    DEBTORS.

C. DAVID COTTINGHAM,
as Chapter 13 Trustee

    PLAINTIFFS

VS

ALABAMA CREDIT UNION,

    DEFENDANT.

BK 03-73899-CMS-13

AP 04-70007-CMS

## MEMORANDUM OF DECISION

This case is before the court in BK 03-73899 for confirmation on debtors' proposed plan of reorganization and Alabama Credit Union's objection. It is also before the court on AP 04-70007 which challenges Alabama Credit Union's liens on debtors' automobiles, requests the turnover of titles to the vehicles, and asserts that the credit union violated the automatic stay. For the reasons indicated below, the court **OVERRULES** Alabama Credit Union's objection to confirmation of the debtors' plan and an order of confirmation will be entered. The court further finds that the credit union's lien is due to be avoided pursuant to 11 U.S.C. Section 547 and that the credit union violated the automatic stay when it perfected its lien postpetition. The court **DENIES** the request for turnover of the titles.

### FINDING OF FACTS

The debtors, Charles H. Anthony and Donna K. Anthony, are the owners of a 1994 Honda Accord, a 1994 Toyota Camry, and a 1995 Chevrolet C1500 truck. Prior to the filing

1

of their bankruptcy petition these automobiles served as collateral for a loan at Citizens Bank of Fayette (Citizens Bank). In August of 2003, Mr. Anthony went to Alabama Credit Union (credit union) to discuss refinancing of the loan with the credit union. It was Mr. Anthony's testimony that the credit union loan would save him approximately $100.00 per month in payments. Included in Plaintiff's Exhibit 1, marked as page 1-4, is a copy of a LOANLINER Open-End Disbursement Receipt Plus (Receipt Plus) form with a date of August 21, 2003, and pages 1-14 and 1-15 are copies of title applications on two of the subject automobiles dated August 21, 2003. From the testimony it appears that this is the date the Anthony's made their application for a loan with the credit union. According to the testimony of Donna Allison, branch manager and loan officer with the credit union, the loan was approved on September 5, 2003 and page 1-5 in Plaintiff's Exhibit 1 is a LOANLINER Open-End Plan Signatures PLUS (Signature Plus) form signed by the debtors and dated September 5, 2003. Also included in Plaintiff's Exhibit 1 at page 1-3 is a second Receipt Plus form dated September 30, 2003.

The first Receipt Plus form (Plaintiff's Exhibit 1, page 1-4) dated August 21, 2003 has the account number 39551 30 and pledges the three cars owned by the Anthonys as collateral with an annual percentage rate on the loan of 4.1%. The amount financed is $17,237.35, with a monthly payment of $509.74, with the first payment due September 21, 2003.

The second Receipt Plus form(Plaintiff's Exhibit 1, page 1-3) is dated September 30, 2003 and again pledges as collateral the Anthonys' three automobiles. The interest rate is 4.7% and the amount financed is $17,312.34, with a monthly payment of $511.92, with the first payment due October 30, 2003. The account number is 39551 31. Neither of these Receipt Plus documents are signed.

As noted earlier, pages 1-14 and 1-15 of Plaintiff's Exhibit 1 indicate that the title applications were dated August 21, 2003.

Mr. Anthony's testimony as to the chronology of events is as follows:

On approximately August 21, 2003 he first went to the credit union and talked about this loan. He returned to the credit union on September 8, 2003 and paid the credit union $16.50 for

2

each of the three automobile title applications which were being submitted on behalf of the credit union. These payments for the title applications were on September 8, 2003, not August 21, 2003. The next payment was due at Citizens Bank on September 15, 2003 and it was his understanding that the credit union would pay off this account prior to that date. Defendant's Exhibit 1 is a copy of an authorization signed by Mr. and Mrs. Anthony and the credit union authorizing Citizens Bank to accept $17,237.35 to pay off the three subject automobiles and is captioned "NOTICE FOR AUTHORIZATION FOR PAYOFF AND DEMAND FOR TITLE". The date appears to be September 19, 2003. Plaintiff's Exhibit 3 is a copy of a notice dated September 26, 2003 from Citizens Bank to Mr. Anthony advising him that his loan payment is due, and written on the notice is the number 17,312.34 until 2:30 tomorrow. That is the same amount indicated on Plaintiff's Exhibit 1 at page 1-3 for the amount of funds being advanced on September 30, 2003. This is greater than the amount shown on Defendant's Exhibit 1 which showed the amount to be paid as $17,237.35, the same amount indicated on Plaintiff's Exhibit 1 at page 1-4 on the August 21, 2003 Receipt Plus agreement. What appears to have happened is the credit union failed to disburse the funds to Citizens Bank before the September 2003 payment was due; and therefore, additional interest and a late charge were added to the amount required to pay off the Citizens Bank balance.

  After receiving the late notice from the Citizens Bank, Mr. Anthony went to the credit union to find out what had happened. The credit union then gave him a check and a piece of paper to take to Citizens Bank to pay off the Citizens Bank loan. He testified that he took Defendant's Exhibit 1, along with the check to Citizens Bank. Citizens Bank gave him his note marked paid and the three titles to his automobiles with the liens released. He took them home, rather than returning them to the credit union. He made payments to the credit union in October and December and received no inquiry from the credit union concerning the titles. On December 9, 2003, he did receive a telephone call from the credit union about the location of the titles. When he advised them that he had them, they asked him to return the titles to them, and he did so that same day. The next day, December 10, 2003, he had an appointment with his

3

Case 03-73899-CMS13    Doc 37    Filed 06/28/05    Entered 06/28/05 15:42:34    Desc Main
Document      Page 3 of 12

attorney. The Anthonys' bankruptcy petition was filed December 12, 2003.

January 5, 2004, the credit union mailed the title applications to the State of Alabama, and Plaintiff's Exhibit 1 at page 1-14 indicates that at least two of the applications were received January 15, 2004.

In summary, the evidence shows that on October 1, 2003 Alabama Credit Union advanced funds on behalf of the Anthonys which paid their loan at Citizens Bank, which was secured by the Anthonys' three automobiles. Sometime prior to October 1, 2003, either August 21, 2003, September 5, 2003, September 8, 2003, or September 30, 2003, the Anthonys granted the credit union a security interest in these three automobiles. On December 12, 2003, when the bankruptcy petition was filed, the credit union had in its possession the three titles, but had not submitted these titles to the Alabama Department of Revenue in order to perfect their lien on the automobiles.

The debtors filed their plan, along with their schedules, December 12, 2003. Under their plan, the debtors treated the credit union as an unsecured creditor and proposed to pay all unsecured creditors, including the credit union, the liquidation value of the three automobiles.

January 22, 2004, the credit union filed its claim asserting that it was a secured creditor in the amount of $16,499.82. (Proof of Claim #3) The credit union asserted that it held a lien on the debtors' three automobiles.

February 2, 2004, the debtors objected to the credit union's claim (Doc. 5) and alleged that the credit union was either an unsecured creditor on the date of filing or the holder of an avoidable lien. February 5, 2004 the debtors also filed AP 04-70007. Count One of the complaint alleged that the perfection of the credit union's lien was a preferential transfer under 11 U.S.C. Section 547. Count Two requested an order that the credit union turn over to the debtor titles to the automobiles with all claimed liens noted as released. Paragraph Three alleged that the credit union perfected its lien after the debtors filed their petition; and therefore, violated the automatic stay under 11 U.S.C. Section 362.

February 3, 2004, the credit union objected to confirmation (BK Doc. 8).

4

Case 03-73899-CMS13    Doc 37    Filed 06/28/05    Entered 06/28/05 15:42:34    Desc Main
Document      Page 4 of 12

April 14, 2004 debtors moved for summary judgment (AP Doc. 8); and, on June 16, 2004, the credit union filed its MOTION FOR SUMMARY JUDGMENT (AP Doc. 17).

August 5, 2004, the debtors filed a MOTION TO SUBSTITUTE C. DAVID COTTINGHAM, CHAPTER 13 TRUSTEE AS PLAINTIFF (AP Doc. 26) which was granted September 9, 2004 (AP Doc. 31). The debtors' motion for summary judgment was denied August 26, 2004 (AP Doc. 29). The credit union's motion for summary judgment was denied February 24, 2005 and the matter was set for trial March 3, 2005.

## CONCLUSIONS OF LAW

This court has jurisdiction of Charles H. Anthony's and Donna K. Anthony's Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this adversary proceeding, a core bankruptcy proceeding as listed at 28 U.S.C. §§ 157(b)(2)(E), (F), and (K), pursuant to 28 U.S.C. § 1334(b). The jurisdiction is referred to this court, pursuant to 28 U.S.C. § 157(a), by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17,1984.

The relief the trustee seeks in his lawsuit, the debtors' objection the classification of the credit union's claim, and the credit union's objection to confirmation of the Anthonys' Chapter 13 plan arise from the same facts and are governed by the same set of legal conclusions. Consequently, the court will deem all issues subsumed into the discussion in this Memorandum of Decision. The memorandum and its accompanying orders will address all issues, with orders consistent with these findings entered in both BK 03-73899-CMS-13 and AP 04-70007.

The issues raised in this case are as follows:

1. Should the credit union's lien be avoided pursuant to 11 U.S.C. § 547?

2. Should the credit union be required to turn over the titles to the debtors' vehicles, and release its liens?

3. Did the credit union violate the automatic stay when it perfected its lien postpetition?

4. Should the debtors' plan be confirmed over the objection of the credit union?

5. Should the debtors' objection to the secured classification of the credit union's claim be sustained?

5

# I.
**The trustee may avoid Alabama Credit Union's lien in the Anthonys' vehicles.**

Count One of the complaint in this adversary proceeding, originally filed by the debtors and now prosecuted by the trustee, does not state that it is brought as a preference action pursuant to 11 U.S.C. §547. However, it recites all of the elements required by Section 547(b) as the basis for such avoidance.

The facts show that on the date the Anthonys filed bankruptcy, the credit union had in its possession titles to all three automobiles, but had not applied to the State Department of Revenue for new titles showing the credit union as first lienholder. Usually in such circumstances, a trustee would sue the creditor under 11 U.S.C. § 544(a), since his interest as a hypothetical judgment lienor as of the December 12, 2003 petition date, would take priority over the credit union's unperfected security interest. In this case, the trustee was required to specifically prove five factual elements to be successful in a Section 547(b) challenge.

Section 547(b) provides as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
> (A) the case were a case under Chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The transfer at issue is the Anthonys' grant of a security interest to the credit union and the creditor's subsequent failure to timely perfect that interest in its collateral. For it is undisputed that the facts show the credit union had not fulfilled the legal requirements for perfection until more than a month after bankruptcy.

Section 547(e) defines when a "transfer" takes place in the meaning of 547(b). When such

6

a transfer has not been perfected on the petition date, Section 547(e)(2)(C) provides that the transfer is deemed made "immediately before the date of the filing of the petition, if such transfer is not perfected at the later of – (i) the commencement of the case; or (ii) 10 days after such transfer takes effect between the transferor and the transferee." Since the credit union's security interest was not perfected until more than 10 days after the bankruptcy itself, under Section 547(e), it is deemed to have occurred on the petition date, December 12, 2003.

As for the elements needed to prove a Section 547 preference, the court has analyzed these facts in the following way:

As required by Section 547(b)(1), the Anthonys' grant of a security interest to the creditor as collateral for its loan is clearly a transfer "to or for the benefit of a creditor." Under Section 547(b)(2), the debtors' grant of the security interest was also "on account of an antecedent debt." Although the parties offered different dates for the credit union's payment of the Anthony's debt, the latest was October 1, 2003. That date and the debt it created is "antecedent" to December 12, 2003, when Section 547(e) sets the unperfected transfer of the security interest.

Pursuant to Section 547(b)(3), the Anthonys must also have been insolvent at the time of the challenged transfer. Section 547(f) creates the presumption that debtors are insolvent for the 90 days before they file bankruptcy, and no evidence in this case contradicts that presumption. Therefore, the Anthonys were insolvent in the meaning of the Section 547(b).

Section 547(b)(4) requires that the transfer have taken place "on or within 90 days" before bankruptcy was filed. Since the transfer is deemed to have occurred "immediately before" the filing of the petition on December 12, 2003, it is within the required 90 days.

Section 547(b)(5) requires that a preference must be a transfer allowing the creditor to receive more in a Chapter 7 liquidation than it would have if the transfer were avoided.

In the Chapter 7 liquidation context, if the credit union held an unperfected lien as of the petition date, its collateral would be sold by the trustee and the proceeds distributed pro-rata to all the Anthonys' unsecured creditors. Those unsecured creditors would include the credit union if the transfer <u>is avoided</u>. Since the vehicles comprise the only non-exempt assets of the Anthony

7

Case 03-73899-CMS13    Doc 37    Filed 06/28/05    Entered 06/28/05 15:42:34    Desc Main
Document      Page 7 of 12

bankruptcy estate, the credit union would get only a pro-rata share of the sale proceeds, along with other unsecured creditors. If the transfer is not avoided, the credit union would get 100 percent of the sale proceeds, and the other creditors would get nothing. Consequently, if the transfer stands, it would allow the credit union to receive more than it would have received in a Chapter 7 liquidation.

Consequently, the record facts show that the Anthony/Alabama Credit Union transaction met all the elements required for avoidance under Section 547(b).

The credit union asserted the equitable doctrine of earmarking as a defense in this case. "Earmarking" is a judicially created exception to Section 547(b) avoidance. Collier on Bankruptcy, Alan N. Resnick and Henry J. Sommer, 15th Ed., described earmarking in the following way at Paragraph 547.03[2]:

> Under the "earmarking doctrine," funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property "transferred" in such a situation was never property of the debtor and so the transfer did not disadvantage other creditors.

A bankruptcy court discussed earmarking in Vieira v. Anna National Bank (In re Messamore), 250 B.R. 913, (Bankr. S.D. Ill. 2000). Messamore involved a refinancing transaction almost identical to the case at hand. The court stated:

> The earmarking doctrine, as developed in case law, is clearly applicable in a refinancing situation to determine whether the debtor's payment of an existing creditor with funds borrowed from a new creditor constitutes a preferential transfer–that is, whether such payment is a transfer of the debtor's "interest in property" to pay the debt owed to the first creditor. This case, however, presents an entirely different question. Here, it is not the transfer of the funds to the debtors' original creditor, Green Point, that is at issue, but the transfer that occurred when the new creditor, Anna Bank, perfected its lien on the debtors' mobile home more than 10 days after execution of the parties' loan agreement. Under the definition of "transfer" applicable in preference actions, the debtors' transfer of an interest in their mobile home did not occur at the time of the loan transaction when they incurred their obligation to Anna Bank. Rather, because Anna Bank failed to perfect within 10 days after the parties' transaction, transfer of the debtors' interest is deemed to have occurred at the time Anna Bank perfected its loan over two months later. See 11 U.S.C. § 547(e)(2)(B). It is this latter transfer, the transfer of the debtors' interest in the mobile home to Anna Bank to secure their pre-existent obligation, that the trustee alleges is preferential. Although the debtors' transfer to Anna Bank arose in the context of a refinancing arrangement, it did not involve payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer. The transfer to Anna Bank that occurred upon perfection of its lien was separate and distinct from the transfer that occurred when Green Point was paid with the borrowed funds, and this transfer was clearly a transfer of the debtors' interest in property, as it depended on the debtors' grant of a security interest to Anna Bank. The earmarking doctrine, therefore is inapplicable in the present case to shield the debtors' transfer to Anna Bank from avoidance

8

as a preference.

See Messamore, 250 B.R. at 917.

Scaffidi v. Kenosha City Credit Union and State of Wisconsin (In re Moeri), 300 B.R. 326, (Bankr. E.D. Wisc. 2003) also involved a refinancing creditor which tardily perfected its lien in the refinanced vehicle. The court followed Messamore, stating:

> Judge Meyers pointed out that, while the earmarking doctrine may apply to payments of funds from a subsequent creditor to the original creditor, it has no application with respect to the subsequent creditor's obligation to timely record its lien, which is a separate and distinct transfer.

See Moeri, 300 B.R. at 329.

The transfer at issue in the Anthony case, like the transfers in Messamore and Moeri, is the perfection of the credit union's own lien on the debtor's automobiles, not the credit union's payment/transfer to Citizens Bank for release of that bank's prior lien. Therefore, the court finds the credit union's lien constitutes an avoidable preference under Section 547(b) and is preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551. Section 551 provides the following:

**Automatic preservation of avoided transfer.**

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate <u>but only with respect to property of the estate</u>. (emphasis added)

The trustee (as creditors' representative) has been substituted as plaintiff in place of the Anthonys. Consequently, the debtors' original request for turnover of the titles under Section 542, and release of the liens is due to be denied at this point.

Further, 11 U.S.C. § 349 provides for reinstatement of the avoided liens if the Anthonys do not complete payments under their plan. Section 349(b)(1)(B) states:

**Effect of dismissal.**
(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–
    (1) reinstates–
        (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; ...

So it is premature to grant the request for turnover or release of the liens at this point in the case.

9

Additionally, the complaint is correct in its allegation that the credit union's action to perfect its lien postpetition is a technical violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(4)[1]. However, there is no evidence that the estate or the debtors suffered damage as a result pursuant to 11 U.S.C. § 362(h)[2]. As a result, the credit union has no liability for the technical violation.

Consequently, judgment is to be entered in favor of the Chapter 13 trustee, and against the creditor on the Section 547(b) avoidance claim.

## II.

### The Anthonys' Chapter 13 plan is due to be confirmed; the credit union's objection is to be overruled; and the debtors' objection to the creditors' secured classification, sustained.

While the debtors' transfer of their interest in the cars is to be avoided, Section 551 preserves the interest for the benefit of the estate, not of the individual debtors. 11 U.S.C. § 1325 sets out the requirements a Chapter 13 plan must satisfy to be confirmed.

11 U.S.C. § 1325(a)(4) is commonly referred to "the best interest of creditors test" meaning that the plan must provide that:

(a) Except as provided in subsection (b), the court shall confirm a plan if– ...

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; ...

At the least, the Anthonys must pay unsecured creditors the value of the three autos as of the

---

[1] **Section 362(a)(4)** provides the following:

**Automatic stay.**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of– ...

> (4) any act to create, perfect, or enforce any lien against property of the estate; ...

[2] **Section 362(h)** provides the following:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

effective date of the plan. The parties have stipulated that the autos had a value of $16,550.00 as of the date of filing. The Anthonys' plan proposed to pay unsecured creditors $18,596.00. That distribution would represent the present value of the autos, with interest, paid to creditors over the life of the plan as required by Section 1325(a)(4).

The credit union's objection to confirmation of the plan protested the Anthonys' treatment of the creditor's claim as unsecured, rather than secured. The facts in McRoberts v. TranSouth Financial (In re Bell), 194 B.R. 192 (Bankr. S.D. Ill. 1996) were virtually identical to the Anthony case. The trustee in Bell avoided a creditor's liens in automobiles because it had failed to perfect its security interest prior to the bankruptcy filing. The court found that the unperfected lien creditor would be an unsecured creditor under terms of the Chapter 13 plan; that unsecured creditors would receive the liquidation value of the vehicles pursuant to Section 1325(a)(4); and that, upon successful completion of payments under the plan terms, the debtor would own the automobiles free and clear of the creditor's lien.

The Anthonys' plan, as proposed, is therefore due to be confirmed, and the credit union's objection to confirmation overruled.

The credit union had filed Proof of Claim 3 for $16,499.82 as a secured claim. The Anthonys had objected to the classification of Claim 3 as secured, asserting it should be allowed as unsecured. The debtors did not dispute the amount of the claim. The creditor's lien has been avoided by the trustee. As stated in Bell, 194 B.R. at 197:

> [T]he trustee's avoidance of the creditors' liens results in nullification of the transfer of property represented by those liens, and the security transactions are ineffective not only as to the trustee but also as to the debtor and creditor themselves as the immediate parties to the transactions.

Therefore, the debtors objection to the secured status of the claim is due to be sustained, and the credit union's Claim 3 is allowed as unsecured in the amount of $16,499.82. As noted in Bell, while the liens have been avoided in this bankruptcy case, they are subject to reinstatement if the case is dismissed prior to the Anthonys' Chapter 13 discharge.

## CONCLUSION

In summary, the court finds judgment in AP 04-70007 must be entered **IN FAVOR OF THE**

11

**TRUSTEE**, and **AGAINST THE ALABAMA CREDIT UNION** on the Section 547(b) avoidance of the credit union's lien. Further, in BK 03-73899, the court finds that the Anthonys's Chapter 13 plan, as proposed, is **DUE TO BE CONFIRMED**; the creditor's objection to confirmation **OVERRULED;** and the debtors' objection to the secured status of the claim, **SUSTAINED**.

Orders, consistent with these findings pursuant to Fed. R. Bankr. R. 7052, will be entered separately.

**DONE and ORDERED** this June 28, 2005.

/s/ C. Michael Stilson

C. Michael Stilson

United States Bankruptcy Judge

12